UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BENDER SQUARE PARTNERS § <br> § <br> V. § <br> § <br> FACTORY MUTUAL INSURANCE § <br> COMPANY, d/b/a FM GLOBAL, and § <br> PNS STORES, Inc. § <br> § | Civ. No. 4:10-cv-4295 |

**MEMORANDUM AND ORDER**

Before the Court is Factory Mutual Insurance Company D/B/A FM Global's Motion for Summary Judgment and Brief in Support ("Motion"). (Doc. No. 21.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED.**

**I.   BACKGROUND**

Bender Square Partners ("Bender" or "Plaintiff") seeks to recover for losses it suffered as a result of Hurricane Ike in September 2008 to property ("the Property") it had leased to PNS Stores, Inc. ("PNS Stores"). (Doc. No. 30-1, 2nd Am. Compl. ¶ 7.) According to Bender, the amounts it seeks to recover are covered under a Commercial Property Insurance Policy ("the Policy") that Factory Mutual Insurance Company, doing business as FM Global ("FM Global") issued to Big Lots, Inc. ("Big Lots") and its subsidiaries, one of which is PNS Stores (collectively, "Defendants"). (*Id.*) Bender alleges that FM Global wrongfully refused to timely and fully pay and indemnify Bender for all losses covered under the Policy. (*Id.* ¶ 8.) As a result, Bender seeks damages and other relief for FM Global's alleged breach of the Policy, breach of the implied covenant

1

of good faith and fair dealing, and violations of the Texas Insurance Code. (*Id.* ¶ 9.) PNS Stores also allegedly failed to obtain insurance coverage over the Property in accordance with the terms of the lease agreement entered into between Bender and PNS Stores ("the Lease") over the Property. (*Id.* ¶ 10.) Therefore, Bender avers, PNS Stores is in default of the Lease and has breached the Lease, entitling Bender to rescission of the Lease and damages resulting from the breach. (*Id.*)

FM Global filed this Motion, arguing that Bender's claims fail as a matter of law. (Doc. No. 21, Mot. Sum. Jgmt 1.) Specifically, FM Global asserts that Bender is not an insured or an additional insured under the Policy and thus has no contractual basis to bring a claim for coverage. (*Id.*) Furthermore, FM Global avers, Bender is not entitled to proceeds from the Policy as a holder of the Policy's certificate of insurance ("the Certificate"), as the Certificate does not confer policy rights under Texas law. (*Id.*) Finally, FM Global argues that Bender is not, and was never, an intended third party beneficiary as a matter of law. (*Id.*) Therefore, FM Global insists, it is entitled to summary judgment as to all of Bender's claims against it. (*Id.*)

## II.     LEGAL STANDARD

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and therefore the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue

for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.* at 1076 (internal quotations omitted). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Services, LLC*, 341 Fed.Appx. 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075. As the Supreme Court has noted, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   ANALYSIS

PNS Stores obtained the Policy from FM Global in order to comply with section 12.2 of the Lease:

> 12.2 Tenant shall during the lease term at its sole expense maintain in full force a policy or policies of standard form fire insurance with standard extended coverage endorsement issued by one or more insurance carriers licensed to do business in the state in which the Premises are located covering the buildings and improvements on the Premises to the extent of their full replacement value exclusive of foundation and excavation costs.

(Ex. B to Mot. Summ. J., "Lease" 5.) The Policy does not identify Bender as an insured or as an additional insured:

> 1. NAMED INSURED AND MAILING ADDRESS
>
> Big Lots, Inc. and any subsidiary, associated or allied company, corporation, firm, organization and Big Lots, Inc. interest in any partnership or joint venture in which Big Lots, Inc. has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured".
>
> 300 Phillipi Road
> Columbus, Ohio 43228
>
> \*\*\*
>
> 1. ADDITIONAL INSURABLE INTERESTS/CERTIFICATES OF INSURNACE
>
> Additional insured interests are automatically added to this Policy as their interest may appear when named as additional named insured, lender, mortgagee, and/or loss payee in the Certificates of Insurance on a schedule on file with the Company. Such interests become effective on the date shown in the Certificate of Insurance and will not amend, extend, or alter the terms, conditions, provisions, and limits of this Policy.

(Ex. A-1 to Mot. Summ. Jgmt, "Policy" 1, 59.) Bender admits that it is not a named insured under the Policy: "With respect to the Commercial Property Insurance Policy at issue in this suit, PNS STORES, INC. failed to obtain a policy that either named Plaintiff as a named insured, or fully complied with the terms of the Lease, thereby breaching the Lease, and damaging Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court, to be proven at trial." (2nd Am. Compl. ¶ 29.) Furthermore, Bender is not named as an additional insured in the Certificate. (Ex. C. to Mot. Summ. J., "Certificate" 1.) Bender also admits that it is not an additional insured or loss payee on

the Policy. (Resp. to Mot. Summ. J. 8.) Bender does claim, however, that it is a named holder of the Certificate, and is an intended or implied third-party beneficiary of the Policy. (*Id.* ¶ 7; Doc. No. 24, Resp. to Mot. Summ. J. 9.)

### A.  *Holder of a Certificate of Insurance*

Although Bender is the named holder of the Certificate, this status does not confer any rights to Bender under the Policy. The Certificate explicitly states:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER OTHER THAN THOSE PROVIDED IN THE POLICY. THIS CERTIFICATE DOES NOT AMEND, EXDTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES DESCRIBED HEREIN.

(Certificate 1.) "It is well-established under Texas law that when a certificate of insurance contains language stating that the certificate does not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the insurance policy." *TIG Ins. Co. v. Sedgwick James of Washington*, 184 F.Supp.2d 591, 596 (S.D. Tex. 2001), *aff'd*, 276 F.3d 754 (5th Cir. 2002). Thus, "[t]he certificate of insurance will not suffice to create insurance coverage if such coverage is precluded by the terms of the policy." *Id.* (citing *Wann v. Metropolitan Life Ins. Co.*, 41 S.W.2d 50, 52 (Tex.Civ.App.-Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Granite Construction Co., Inc. v. Bituminous Ins. Co.*, 832 S.W.2d 427 (Tex.App.-Amarillo 1992, n.w.h.)). *See also Lexington Ins. Co. v. Autobuses Lucano Inc.*, 256 Fed.Appx. 682, 683 (5th Cir. 2007) (unpublished) ("Texas law provides that the certificate of insurance does not supersede the plain language of the insurance policy."); *RNA Investments Inc. v. Employers Ins. of Wausau*, No. 05-99-01704-CV, 2000 WL

1708918, at *4 (Tex.App.-Dallas Nov. 16, 2000, n.w.h.) (noting that insurance certificates do not create insurance coverage where none existed); *C & W Well Service, Inc. v. Sebasta*, No. B14-92-01010-CV, 1994 WL 95680, at *7 (Tex.App.-Houston [14th Dist.] March 24, 1994, n.w.h.) ("Here, the certificate of insurance itself did not manifest the insurance coverage afforded appellant as an insured. Rather, the certificate merely evidenced appellant's status as an insured and, by its very language, specified that the insurance coverage was that provided by, but subject to the terms, exclusions and conditions of, the named insurance policy. Thus, appellant's insurance coverage is that provided by the insurance policy itself."). Therefore, the Certificate does not confer any rights to Bender under the Policy.

### B. *Intended Third Party Beneficiary*

To qualify as a third-party beneficiary of the Policy, Bender must prove: (1) that it was not privy to the Policy; (2) that the Policy was actually made for its benefit; and (3) that the PNS Stores and FM Global intended for Bender to benefit by the Policy. *Talman Home Federal Savings & Loan Association of Illinois v. Am. Bankers Insurance*, 924 F.2d 1347, 1350-51 (5th Cir. 1991) (citing *Hellenic Invest., Inc. v. Kroger Co.*, 766 S.W.2d 861, 864 (Tex.App. 1989)). "In determining intent under Texas law, this Court must begin with the presumption that parties contract for themselves; thus, it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that this was the intention of the contracting parties." *Id.* (citing *Republic Nat'l Bank*, 427 S.W.2d 76, 79 (Tex.Civ.App. 1968, writ ref'd n.r.e.); *Hellenic*, 766 S.W.2d at 865; *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1455 (5th Cir. 1987)). "The

intention to contract or confer a benefit to a third party must be clearly and fully spelled out in order to show the contracting parties entered into the contract directly for the third party's benefit." *First Union Nat. Bank v. Richmont Capital Partner*, 168 S.W.3d 917, 929 (Tex.App.-Dallas 2005, no pet.) (citing *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 641, 651 (Tex. 1999)). "Furthermore, any intent of the contracting parties to benefit a third-party is to be derived solely from the language of the contract." *Talman*, 924 F.2d at 1350-51. "The fact that a third party might receive an incidental benefit from a contract does not give that third party a right to enforce the contract." *First Union Nat. Bank*, 168 S.W.3d at 929 (citing *MCI*, 995 S.W.2d at 651). "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id.* (citing *Dallas Firefighters Ass'n v. Booth Research Group, Inc.*, 156 S.W.3d 188, 192-93 (Tex.App.-Dallas 2005, pet. denied); *Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex.App.-Dallas 2001, no pet.)). In sum, "'[u]nder Texas law, a non-party to a contract has a heavy burden when it claims third-party beneficiary status.'" *Staton Holdings, Inc. v. First Data Corp.*, No. Civ.A. 3:04-CV-2321P, 2006 WL 1343631, at *8 (N.D. Tex. May 16, 2006) (quoting *Missouri Pac. R.R. Co. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994)).

Bender does not proffer any evidence to support the inference that it is an intended third-party beneficiary to the Policy. Instead, Bender states that FM Global "has not met its burden in showing that the first-party property insurance policy at issue was *not* for the benefit of Plaintiff—the property owner." (Doc. No. 38, Sur-Reply to Reply to Mot. Summ. J. 2.) Yet Bender bears the burden of showing why it is an intended third-

party beneficiary. At most, Bender offers the following: "FM Global simply relies on the general maintenance provision of the Lease Agreement to attempt to avoid the underlying question—*for whose benefit is a first-party property insurance policy if not the property owner?*" (*Id.* (emphasis in original).) Bender simply does not meet its heavy burden of showing that it is an intended third-party beneficiary. Nor does the Court find, in the record, any evidence to support such an assumption.

### C. Implied Third Party Beneficiary

Bender also argues that it is an implied third-party beneficiary. It asserts that "the owner-lessor of a commercial property has standing as an intended/implied third-party beneficiary to sue the insurer directly under a first-party property insurance contract, where the lessee was required to procure and maintain said insurance pursuant to a lease agreement even though the owner-lessor is not a named or additional insured under the policy." (Resp. to Mot. Summ. J. 2.) Bender is correct that Texas courts have recognized this exception to the general rule that strangers to a policy cannot maintain a suit on that policy. *Cable Communications Network, Inc. v. Aetna Cas. & Surety Co.*, 838 S.W.2d 947, 950 (Tex.App.-Hous. [14th Dist.] 1992, no writ) ("For example, if a lessee promised the lessor that the leased property would be insured for the lessor's benefit and failed to do so, the benefits of the insurance policy taken out by the lessee on the leased property would be subject to the lien in favor of the lessor, and the lessor may then proceed directly against the insurance company to recover its share of any funds payable under the policy."); *State Farm Fire & Cas. Co. v. Leasing Enterprises*, 716 S.W.2d 553, 554 (Tex.App.-Hous. [14th Dist.] 1986, writ ref'd n.r.e.) ("Leasing Enterprises had an equitable right to be covered by the insurance policy because the lease required that

8

Moore obtain insurance on the bulldozer with loss payable to Leasing Enterprises. Where a mortgagor or lessee is charged with the duty of obtaining insurance on property with loss payable to the mortgagee or lessor, but the policy does not contain such a provision, equity will treat the policy as having contained the loss payable provision and entitle the mortgagee or lessor to recover under the policy.").

Yet "[t]he equitable insured status is a remedy fashioned to protect a lessor where the lessee fails to comply with its obligations under the lease to obtain insurance coverage for the leased property." *Mt. Hawley Insurance Co. v. Lexington Insurance Co.*, 110 Fed.Appx. 371, 375 (5th Cir. 2004) (unpublished). Therefore, the equitable remedy does not apply when there is no provision in the lease requiring the lessee to procure insurance on the lessor's behalf, or requiring the insurance to name the lessor as an insured, additional insured, or loss payee. *Id.* Section 12.2 of the Lease does not require PNS Stores to procure insurance naming Bender as a co-insured. An interlineation below section 12.1, however, does state that "[s]uch policies of insurance shall be issued in the name of tenant and landlord and for the mutual and joint benefit and protection of said parties; and such policies of insurance or copies thereof, shall be delivered to the landlord." (Lease 5.) Bender insists that the interlineation applies to both section 12.1 *and* section 12.2. (Doc. No. 31, Resp. to PNS's Mot. Summ. J. 11-12.[1])

"When construing contracts and other written instruments, our primary concern is to ascertain the true intent of the parties as expressed in the instrument." *Fort Worth Transp. Authority v. Thomas*, 303 S.W.3d 850, 857 (Tex.App.-Fort Worth 2009, pet. denied) (citing *NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463

---

[1] Bender incorporated its Response to PNS's Motion for Summary Judgment in its Sur-Reply. (Sur-Reply to Reply to Mot. Summ. J. 2.)

9

(Tex.App.-Fort Worth 2007, no pet.)). "'We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005)). "Under Texas law '[i]f the written instrument is so worded that it can be given a certain or definite meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.'" *Square D Co. v. House of Power Elec., L.C.*, No. H-09-3917, 2011 WL 6091805, at *3 (S.D. Tex. Dec. 7, 2011) (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). "A contract is ambiguous if, after applying established rules of construction, its meaning is uncertain and doubtful or the writing is reasonably susceptible to more than one meaning." *Pitts & Collard, L.L.P. v. Schechter*, --- S.W.3d ---, 2011 WL 69328515, at *5 (Tex.App.-Houston 2011) (citing *Dewitt County Elec. Coop.*, 1 S.W.3d 96, 100 (Tex. 1999)). The construction of an ambiguous contract is a question of fact. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

"In determining whether a contract is ambiguous, courts construe and harmonize all provisions of the contract to discern the parties' intent." *Pitts & Collard, L.L.P.*, 2011 WL 69328515, at *5 (citing *Coker*, 650 S.W.2d at 393-94). "A contract is not ambiguous merely because of a simple lack of clarity, or because the parties proffer conflicting interpretations of a term." *Square D Co.*, 2011 WL 6091805, at *3 (citing *DeWitt County Electric Co-op*, 1 S.W.3d at 100). This is because "'[t]he parties' interpretation of a contract is parol evidence, and parol evidence is not admissible to create an ambiguity.'" *Pitts & Collard, L.L.P.*, 2011 WL 6938515, at *5 (quoting *Zurich Am. Ins. Co. v. Hunt*

10

*Petroleum (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex.App.-Houston [14th Dist.] 2004, no pet.)). Thus, "[f]or parol evidence of the parties' intent to be admissible, the contract must first be ambiguous as a matter of law." *Id.* (citing *Estes v. Rep. Nat'l Bank*, 462 S.W.2d 273, 275 (Tex. 1970)). "When a court determines that a contract is ambiguous, a court may admit extraneous evidence to determine the true meaning of the instrument and may consider the parties' interpretations of the contract." *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 413 (Tex.App.-Austin 2005, pet. denied).

The Court concludes that the Policy is not ambiguous. The interlineation, initiated by an asterisk, starts from the end of the last sentence of section 12.1. If the parties intended for section 12.2 to also require insurance to be issued in the name of the tenant and landlord, the section would have an asterisk referring to the interlineation above, or another interlineation altogether. Were the Court to construe the interlineation as applying to section 12.2, it could also by extension apply to the sections below it, where such a provision would be inappropriate. The Policy is simply not reasonably susceptible to more than one meaning. Therefore, the Court concludes that section 12.2 did not require PNS Stores to procure a policy issued in Bender's name. As a consequence, Bender cannot be an implied third-party beneficiary.

### D.  Bender's Claims

As Bender is not an insured, additional insured, or third-party beneficiary to the Policy, Bender cannot bring claims against FM Global for breach of contract. Similarly, Bender cannot bring claims against FM Global for breach of the duty of good faith and fair dealing because that duty concerns the relationship of insurers to their insured pursuant to an insurance contract between them. *Republic Ins. Co. v. Stoker*, 903 S.W.2d

338, 340 (Tex. 1995) ("An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims."); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex. 1994) ("The duty of good faith and fair dealing emanates from the special relationship between the parties and not form the terms of the contract, therefore its breach gives rise to tort damages and not simply to contractual liability. However, the 'special relationship' exists only because the insured and the insurer are parties to a contract that is the result of unequal bargaining power, and by its nature allows unscrupulous insurers to take advantage of their insureds. Without such a contract there would be no 'special relationship' and hence, no duty of good faith and fair dealing." (internal citations and footnote omitted)); *see also McCord v. Prudential Ins. Co. of Am.*, No. 1:10–CV–413, 2011 WL 32430486, at *9 (E.D. Tex. July 1, 2011) ("The elements of a cause of action for the breach of duty of good faith and fair dealing thus necessarily require the existence of an insurance contract between the plaintiff and the defendant insurer.").

FM Global is also entitled to summary judgment as to Bender's claim under Chapter 542 of the Texas Insurance Code. Bender asserts that FM Global violated the Texas Insurance Code because it (a) failed to provide notice in writing of the acceptance or rejection of its claim within the applicable time constraints; and (b) delayed payment of the claims on the Property following receipt of all items, statements, and forms reasonably requested and required longer than the applicable time period. (2nd Am. Compl. ¶ 25.) Texas Insurance Code § 542.058(a) provides: "[I]f an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified

by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." In turn, § 542.060 only requires the insurer to pay the holder of the policy or the policy's beneficiary. *Id.* § 542.060(a) ("If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, the interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees."). As a consequence, Bender cannot bring its claims under Chapter 542 of the Texas Insurance Code against FM Global. Therefore, FM Global is entitled to summary judgment as to all of Bender's claims against it.

### IV. CONCLUSION

For the reasons explained above, FM Global's Motion (Doc. No. 21) is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 24th day of January, 2012.

_____
**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**