UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **BENDER SQUARE PARTNERS** § | |
| § | |
| **V.** § | |
| § | Civ. No. 4:10-cv-4295 |
| **FACTORY MUTUAL INSURANCE** § | |
| **COMPANY, d/b/a FM GLOBAL, and** § | |
| **PNS STORES, Inc.** § | |
| § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff Bender Square Partners' Motion for Declaratory Judgment and Cross-Motion for Summary Judgment and Memorandum and Support ("Motions"). (Doc. No. 36.) For the reasons explained below, the Court concludes that the Motions should be **GRANTED.**

**I. BACKGROUND**

Bender Square Partners ("Bender" or "Plaintiff") seeks to recover for losses it suffered as a result of Hurricane Ike in September 2008 to property ("the Property") it had leased to PNS Stores, Inc. ("PNS Stores"). (Doc. No. 30-1, 2nd Am. Compl. ¶ 7.) According to Bender, the amounts it seeks to recover are covered under a Commercial Property Insurance Policy ("the Policy") that Factory Mutual Insurance Company, doing business as FM Global ("FM Global") issued to Big Lots, Inc. ("Big Lots") and its subsidiaries, one of which is PNS Stores (collectively, "Defendants"). (*Id.*) Bender alleges that FM Global wrongfully refused to timely and fully pay and indemnify Bender for all losses covered under the Policy. (*Id.* ¶ 8.) As a result, Bender seeks damages and other relief for FM Global's alleged breach of the Policy, breach of the implied covenant

1

of good faith and fair dealing, and violations of the Texas Insurance Code. (*Id.* ¶ 9.) PNS Stores also allegedly failed to obtain insurance coverage over the Property in accordance with the terms of the lease agreement entered into between Bender and PNS Stores ("the Lease") over the Property. (*Id.* ¶ 10.) Therefore, Bender avers, PNS Stores is in default of the Lease and has breached the Lease, entitling Bender to rescission of the Lease and damages resulting from the breach. (*Id.*)

FM Global filed a Motion for Summary Judgment, arguing that Bender's claims against it fail as a matter of law. (Doc. No. 21, FM Global's Mot. Sum. Jgmt 1.) On January 24, 2012, the Court granted FM Global's Motion. (Doc. No. 45.) PNS Stores had also filed a Motion for Summary Judgment (Doc. No. 25), which the Court dismissed without prejudice to refiling because it was mooted by Bender's filing of its Second Amended Complaint (Doc. No. 44). Bender then filed these Motions. As PNS Stores has not filed a second Motion for Summary Judgment, the only pending motions before this Court are Bender's Motion for Declaratory Judgment and Cross-Motion for Summary Judgment.

**II. STANDARD**

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and therefore the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). "Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party." *Nichols v.*

2

*Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

### III. ANALYSIS

The issue before this Court is whether PNS Stores materially breached the Lease by obtaining an insurance policy that included a $250,000 deductible. The Lease provides:

> 12.2 Tenant shall during the lease term at its sole expense maintain in full force a policy or policies of standard form fire insurance with standard extended coverage endorsement issued by one or more insurance carriers licensed to do business in the state in which the Premises are located covering the buildings and improvements on the Premises to the extent of their full replacement value exclusive of foundation and excavation cost.

(Doc. No. 36-2, Ex. B to Mot. Sum. Jgmt, Lease § 12.2.) Bender argues that PNS Stores materially breached the Lease by failing to comply with Section 12.2. Specifically, Bender avers that PNS Stores failed to insure the Property to its full replacement value exclusive of foundation and excavation cost because the Policy it obtained had a $250,000 deductible. (Mot. Sum. Jgmt 2.) Moreover, Bender contends, PNS Stores' breach is exemplified by the fact that PNS Stores has yet to tender payment for the amount of damage FM Global found in its assessment, which was below the deductible amount. (*Id.*)

PNS Stores counters that "there is nothing in the Lease prohibiting PNS from carrying an insurance policy with a deductible." (Doc. No. 40, Resp. to Mot. Sum. Jgmt 5.) The parties were free to negotiate such a provision, PNS Stores explains, and declined to do so. (*Id.*) Furthermore, PNS Stores argues, the Lease expressly states that Bender is responsible for repairing the roof and other structures at its sole expense:

> 8.1 Tenant shall keep the Premises in good condition and repair at Tenant's sole expense, excluding, however the roof, roof structures and supports, foundation and structural supports, structural portion of the floors, exterior walls, bearing and structural walls, beams and columns, all such exclusions to be maintained in good condition and repair by Landlord….
>
> \*\*\*
>
> 15.1 If the Premises or the Shopping Center in which the Premises are located are damaged by any cause whatsoever, Landlord shall forwith at its sole expense repair, restore and rebuild the same with all reasonable dispatch and diligence, so far as practicable and lawful, to a complete unit of like quality, character and condition as that which existed immediately prior to their damage….

(Lease §§ 8.1, 15.1; Resp. to Mot. Sum. Jgmt 6.) Therefore, PNS Stores concludes, Bender cannot demonstrate entitlement to damages from PNS Stores. (*Id.* 6-7.) In other words, PNS Stores contends, even if PNS Stores did breach the lease, Bender was not damaged. (*Id.* 7.) PNS Stores urges that this Court give the words in the Lease their normal meaning: that Bender is obligated, at its expense, to repair any damage to the Property. (*Id.*) Considered separately or taken together, PNS Stores avers, Sections 8.1 and 15.1 "demonstrate that [Bender] has the responsibility to repair, at its sole expense, the very damage that forms the basis of [Bender]'s claims in this lawsuit." (*Id.*)

4

Finally, PNS Stores asserts that Bender is barred under the Lease from bringing any claims against PNS Stores for alleged damage caused by Hurricane Ike. (*Id.* 7-8.) PNS Stores points to Section 12.6 of the Lease:

> 12.6 The parties release each other, and their respective authorized representatives, from any claims for damage to any person or to the Premises and the building and other improvements in which the Premises are located, and to the fixtures, personal property, tenant's improvements, and alterations of either Landlord or Tenant in or on the Premises and the buildings and other improvements in which the Premises are located that are caused by or result from risks insured against under any insurance policies carried by the parties and in force at the time of any such damage.

(Lease § 12.6; Resp. to Mot. Sum. Jgmt 8.) PNS Stores contends that the claims in this case relate to damage to the Property, allegedly caused by Hurricane Ike, covered by the FM Global Policy obtained by PNS Stores. (*Id.*) The Policy includes coverage for named storm damage, PNS Stores points out, which would encompass any damage from Hurricane Ike. (*Id.* 8; Doc. No. 36-4, Ex. D to Mot. Sum. Jgmt, FM Global Policy § A(12)(G).) Accordingly, PNS Stores insists, as the alleged damage from Hurricane Ike was a risk insured against by the Policy, Bender cannot maintain a claim against PNS Stores. (Resp. to Mot. Sum. Jgmt 8.)

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 288 (5th Cir. 2004). In interpreting the Lease, this Court's primary concern is to give effect to the true intent of the parties. *Burns v. Exxon Corp.*, 158 F.3d 336, 340 (5th Cir. 1998) (citing *Deauville Corp. v. Federated Department*

*Stores, Inc.*, 756 F.2d 1183, 1193 (5th Cir. 1985); *Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996)). To achieve this objective, this Court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)). "If, however, the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous." *Id.* (citing *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977); *Coker*, 650 S.W.2d at 393; *Universal*, 243 S.W.2d at 157).

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (citing *Coker*, 650 S.W.2d at 394; *R&P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980)). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument." *Id.* (citing *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981); *R&P Enterprises*, 596 S.W.2d at 518). If there is no ambiguity, however, "the writing alone will be deemed to express

6

the intention of the parties, and objective intent rather than subjective intent controls." *Burns v. Exxon Corp.*, 158 F.3d at 340 (citing *Sun Oil Co. (Del.)*, 626 S.W.2d at 728).

Examining the Lease as a whole, the Court concludes that the Lease is not subject to multiple interpretations. Rather, Section 12.2 clearly requires PNS Stores to obtain an insurance policy that does not include a deductible, or alternatively to assume liability for the deductible amount. Section 12.2 obligates PNS Stores to maintain an insurance policy on the property to its full replacement value; further, PNS Stores must maintain that policy "in full force" and "at its sole expense." If PNS Stores elects to obtain an insurance policy with a deductible, it is required to pay the deductible amount at its sole expense.

The Court's conclusion is supported by the (albeit sparse) case law on point. In every case found by the Court, lessees obligated to obtain insurance pursuant to a lease are either expected to obtain a policy without a deductible, or are required to pay the lessor the deductible amount in the event of damage to the property. There is no case, to the Court's knowledge, in which a court has held that a lessee may obtain a policy with a deductible, but has no obligation to self-insure for the deductible amount. *See Boston Market Corp. v. Hack*, No. A-0182-05T2, 2007 N.J. Super. Unpub. LEXIS 2816, at * 7-9 (N.J. Super. Aug. 20, 2007) (finding that "in the absence of language in the lease that specifies a maximum allowable deductible or that directly prohibits insurance that features a deductible amount, the trial court could, and did, justifiably conclude that a deductible was not only permissible; it was reasonably to be expected," but noting that "the landlord would be unaffected by the size of the deductible" because the insurance company would pay the claims fully on a first-dollar basis, with lessee then reimbursing

the insurance company for the deductible amount); *Seattle First National Bank v. Mitchell*, 87 Wash.App. 448, 455-56, 942 P.2d 1022 (1997) ("'A deductible policy of insurance is a policy issued for a reduced premium, in consideration for which the insurer pays a loss only to the extent that the loss exceeds a specified deductible sum. This makes the insured a self-insurer for the deductible. If a party to a lease who is obligated to effect insurance of some nature that insures another party obtains a deductible policy, that policy should be made liable for the amount of the deduction.'" (quoting 3 Milton R. Friedman, *Friedman on Leases*, § 38.1 at 1687 (3d ed. 1990))); *Carpet Central, Inc. v. Johnson*, 222 Ga.App. 26, 28 (1996) ("The evidence does not demonstrate that [lessee] could not obtain a policy without a deductible. Absent such evidence, [lessee] has not demonstrated that it fulfilled its obligation under the terms of the lease to maintain fire and casualty insurance coverage *in fully adequate amounts* on its personal property, including trade fixtures, which was placed in or about the leased premises." (emphasis in original)); *Aerospatiale Helicopter Corp. v. Universal Health Services, Inc.*, 778 S.W.2d 492, 503 (Tex.App.-Dallas 1989, writ denied) (When helicopter was destroyed, lessee of the helicopter paid lessor the amount of insurance required by the lease minus the $25,000 of the insurance deductible. The Court held that there was insufficient evidence for the trial court to have found that the lessee satisfied the provisions of the lease requiring insurance coverage, and remanded for consideration of whether lessor was estopped from claiming entitlement to the deductible because it did not object to the deductible amount.); *Lancon v. Vallot, Jr.*, No. 83-1095, 459 So.2d 1360, 1362 (La.App. 3d Cir. 1984) (concluding, where lessee maintained a checking account solely for self-insurance to cover deductible claims, that "[r]ealistically, [lessee] cannot be expected to

procure total underwriting of $1,000,000 worth of liability insurance with no deductible provisions, and we can hardly imagine that that could have been the intention of either party at the time of the lease agreement"); *Owens Illinois, Inc. v. Lake Shore Land Co., Inc.* 457 F.Supp. 896, 905 (W.D. Penn. 1978) (stating that it was "not proper for the [lessee] to secure a policy with a $5,000 deductible clause" because "[t]he lease provided … that lessee should carry fire and extended coverage insurance on the premises"); *Burger Chef Systems, Inc. v. Melfred Co.*, 547 F.2d 786, 790 (4th Cir. 1976) (observing, that by obtaining an insurance policy with a $100,000 deductible clause, lessee "was self insured for the first $100,000 of a loss," and finding that lessee "breached the terms of the lease agreement when it procured a policy of insurance with a $100,000 deductible cause [sic] which it had to pay, and in further providing, contrary to the plain terms of the lease, that it had the right to adjust the loss and jointly receive the proceeds"). In light of these cases, the Court finds PNS Stores' reading of the Lease—that it may obtain a policy with a deductible and nonetheless decline pay the deductible amount in the event of damage to the Property—to be implausible.

The Court also disagrees that Sections 8.1, 15.1, and 12.6 deprive Bender of a remedy. Section 8.1 requires Bender to keep certain portions of the Property, including the roof and roof supports, in good condition and repair. (Lease § 8.1.) Section 15.1 obligates Bender to, at its sole expense, repair, restore and rebuild "the Premises or the Shopping Center" in the event of damage. (*Id.* § 15.1.) These provisions do not, however, indicate that Bender is not entitled to insurance proceeds covering any damage to the Property. Further, considering the Lease as a whole, the Court believes that Section 12.6 does not bar Bender from suing PNS Stores for breach of the Lease. Rather, the true

9

intent of the parties, in formulating Section 12.6, was to preclude lawsuits over damage that will be reimbursed by insurance proceeds. Here, Bender is alleging that PNS Stores breached the Lease by failing to obtain an insurance policy covering the full replacement value. In other words, Bender's claim is for breach of contract. To the extent Bender seeks a claim for damage, it is for "risks" that are not "insured against" because they are less than the Policy's deductible.

The Court concludes that there is no genuine issue of material fact as to Bender's breach of contract and declaratory judgment claims. It is not disputed that a valid contract existed, and that Bender performed under that contract. PNS Stores breached the unambiguous provisions of the Lease, and Bender was injured by PNS Stores' breach because it was unable to obtain reimbursement for damage to the Property. Further, there is no genuine issue of material fact as to whether PNS Stores defaulted under the Lease. The Lease describes "default" as

> [t]he failure of either party to perform any term, condition, covenant or agreement of this Lease, excluding the payment of rents or additional charges, and the continuation of such failure for a period of thirty (30) days after the other party has received written notice specifying the same or in a case where the default cannot be cured within thirty (30) days, if the defaulting party shall not promptly within such period, commence and diligently pursue to completion the remedy of such default.

(Lease § 20.1(B).) There is no genuine issue of material fact as to whether PNS Stores failed to perform under a condition of the Lease, namely Section 12.2. As such, Bender is entitled to a declaratory judgment that PNS Stores has so defaulted, and, as provided under the Lease, may, at its option, reenter and take possession of the Property. (*Id.* § 20.3(A).)

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** Bender's Motions.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of March, 2012.

*[signature]*

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**